UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | 21 MC 102 (AKH)<br>(all actions identified in the Table attached to the Notice of Motion)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TULLY CONSTRUCTION CO. INC AND TULLY INDUSTRIES, INC'S MOTION TO TRANSFER AND/OR STAY** |
| THIS DOCUMENT APPLIES TO ALL WORLD TRADE CENTER DISASTER SITE LITIGATION | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS TULLY CONSTRUCTION CO. INC
AND TULLY INDUSTRIES, INC'S MOTION TO TRANSFER AND/OR STAY**

**PRELIMINARY STATEMENT**

Defendants Tully Construction Co. Inc. and Tully Industries, Inc. (collectively "Tully") move before this Court to transfer all actions currently pending against Tully in Consolidated Master Docket Number 21 MC 102 ("21 MC 102") to Consolidated Master Docket Number 21 MC 100 ("21 MC 100") or, in the alternative, to stay all actions in 21 MC 102 as against Tully pending resolution of the appeal currently pending before the United States Court of Appeals for the Second Circuit.[1] Each and every action currently pending against Tully in 21 MC 102 involves plaintiffs with claims that are substantially similar to the nature of claims asserted against Tully by plaintiffs in 21 MC 100. All of the Check-Off Complaints in 21 MC 102 naming Tully as a defendant assert claims that relate to work the plaintiffs allegedly performed at

---

[1] Tully is one of the appellants in the appeal of this Court's October 17, 2006 Opinion that currently is pending before the Second Circuit and captioned In Re: World Trade Center Disaster Site Litigation, 06-5324-cv (2d Cir). As the Court is aware, the Second Circuit has stayed all proceedings in the 21 MC 100 docket pending resolution of this appeal.

the Deutsche Bank building (130 Liberty Street). The Deutsche Bank building is part of the WTC Site as defined in Case Management Order 3 in 21 MC 100. (CMO 3, 21 MC 100 at 1). All of the work Tully performed there was pursuant to its work as a contractor for the City of New York (the "City") as part of the rescue, recovery and debris removal operations following the collapse of the World Trade Center ("WTC") on September 11, 2001. (*See* Declaration of Defendant Tully Construction Co. Inc., pursuant to Section III(A)(3) of Case Management Order 3 ("Tully Decl.") at 6) (relevant excerpts attached to the Certification of Joseph E. Hopkins, Esq. dated August 1, 2007 ("Hopkins Cert.") as Exhibit A) (submitted herewith). As this Court previously recognized in its April 13, 2007 Order, plaintiffs who allegedly worked in the Deutsche Bank building and are bringing claims against Tully for its work as a City contractor properly belong in 21 MC 100. *See* April 13, 2007 Order, Docket No. 06-cv-15494, 21 MC 100 (AKH) (the "*Zablocki* Order") (attached as Exhibit D to the Hopkins Cert.).

The Second Circuit already has stayed actions in 21 MC 100 against the City and its contractors while their appeal on potentially dispositive immunities motions is pending. (*See* March 9, 2007 Order attached as Exhibit C to Hopkins Cert.). Plaintiffs should not be permitted to circumvent the otherwise applicable Second Circuit stay simply by placing such actions in a different administrative docket.[2] Therefore, for all the foregoing reasons, Tully respectfully requests that the actions against Tully in 21 MC 102 should be transferred to 21 MC 100 or, in

---

[2] Tully's counsel Joseph E. Hopkins, Esq. communicated with Messrs. Napoli and LoPalo (counsel for plaintiffs in the 21 MC 102 actions that are the subject of this motion) on July 31, 2007, and requested their agreement to either transfer or stay these actions. Mr. Hopkins requested a decision by 10 a.m. on August 2, 2007. Although indicating that they would respond "shortly", as of the time of this filing Plaintiffs' counsel had not yet responded. To avoid prejudice and protect Tully's rights, this motion is being filed at this time. (*See* Hopkins Cert. at ¶ 10) (submitted herewith).

the alternative, stayed as to Tully pending resolution of the appeal currently pending before the Second Circuit.[3]

## PROCEDURAL HISTORY

Tully is one of the four primary contractors hired by the City to assist in the rescue, recovery and debris removal operations at the WTC site and related locations after the events of September 11, 2001. (*See* Tully Decl. at 6). As of this date, Tully has been named as a defendant in approximately 7,269 complaints in the 21 MC 100 docket.

On August 9, 2005, this Court entered a Case Management Order ("CMO") creating the 21 MC 102 docket consisting of "[c]ases brought by plaintiffs … alleging personal injury primarily … based on conduct that occurred outside the area defined as the World Trade Center Site in Case Management Order 3 of the 21 MC 100". *See* August 9, 2005 CMO, 21 MC 102 at ¶ 3 (emphasis in original). The approximately one hundred Check-Off Complaints filed in 21 MC 102 naming Tully as a defendant (the "21 MC 102 Tully Plaintiffs")[4] make substantially similar allegations as those made by plaintiffs in Check-Off Complaints brought in 21 MC 100 against Tully. All of the claims in both dockets relate to Tully's work within the WTC Site as one of the City's contractors involved in the rescue, recovery and debris removal operations. (*See e.g., Byron Acosta v. Bankers Trust Company*, Index No. 07-cv-1552 at 6, 8, 10) (attached as Exhibit E to the Hopkins Cert.).

---

[3] Tully understands that Verizon has brought a motion to stay all actions against Verizon arising out of work allegedly performed by certain plaintiffs in Verizon's building. Tully has taken no position regarding Verizon's motion.

[4] A table identifying these recently filed actions is attached to the Notice of Motion submitted herewith. For the convenience of the Court, a copy of that table also is attached as Exhibit B to the Hopkins Cert.

3

# ARGUMENT

## I. THE 21 MC 102 TULLY PLAINTIFFS' ACTIONS SHOULD BE TRANSFERRED TO 21 MC 100

It is axiomatic that it is within the Court's discretion to transfer or stay actions before the Court.[5] Here, the 21 MC 102 Tully Plaintiffs' complaints fall outside the prerequisites established by this Court in defining the 21 MC 102 docket and thus should be transferred. The Court created the 21 MC 102 docket to consolidate complaints based upon conduct outside of the WTC Site. *See* CMO 3, 21 MC 100; August 9, 2005 CMO, 21 MC 102. Case Management Order 3 in 21 MC 100 defines the WTC Site as:

> [T]he 16-acre site including the sites of the buildings known as 1 World Trade Center, 2 World Trade Center, 3 World Trade Center, 4 World Trade Center, 5 World Trade Center and 7 World Trade Center, as well as the surrounding plaza and underground shopping, parking and public transit facilities. The World Trade Center Site shall also be defined to include the World Financial Center and Winter Garden, the Verizon Building at West and Vesey Streets, the Deutsche Bank Building at Liberty and Greenwich Streets, 90 West Street, St. Nicholas Church, and 125 Cedar Street, as well as the Fresh Kills Landfill site, the debris-removal barges, piers and transfer stations.

(CMO 3, 21 MC 100 at 1). The 21 MC 102 Tully Plaintiffs assert claims that arise out of work allegedly performed by those plaintiffs at the Deutsche Bank building located at Liberty and Greenwich Streets, which is part of the WTC Site as defined by the Court. Therefore, the 21 MC 102 Tully Plaintiffs' actions properly belong in the 21 MC 100 docket, not in 21 MC 102.[6]

This Court already has upheld and enforced this approach in the *Zablocki* Order. In that order, the Court rejected plaintiff Zablocki's attempt to transfer his case from 21 MC 100 to 21

---

[5] *See Collazos v. U.S.* 368 F.3d 190, 201 (2d Cir. 2004) (citing *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316-17 (2d Cir. 1998)); *Johnson v. Morgenthau*, 160 F.3d 897, 899 (2d Cir. 1998).

[6] Tully acknowledges this Court's discussions with counsel at the June 15, 2007 21 MC 102 status conference with respect to the administrative nature of the definitional distinctions between the 21 MC 100 and 21 MC 102 dockets. However, in Tully's unique case as described herein, these distinctions are more than mere semantics and could significantly affect Tully's substantive rights.

MC 102, finding that his complaint alleged that he worked in the Deutsche Bank building at 130 Liberty Street and that that location is "considered part of the World Trade Center site, as defined in Case Management Order No. 3, 21 MC 100 (February 7, 2005)." Considering that plaintiff Zablocki's action was brought against Tully (among others), this Court further denied plaintiff Zablocki's request to transfer because Tully is one of the City's contractors involved in the 21 MC 100 docket and is a party to the appeal pending before the Second Circuit (which has ordered a stay of all proceedings in 21 MC 100). Tully seeks to extend the impact of the *Zablocki* Order to all of the 21 MC 102 Tully Plaintiffs.[7]

This Court's comments at the June 15, 2007 status conference in 21 MC 102 reaffirmed the reasoning in the *Zablocki* Order and also indicated that these 21 MC 102 actions should be transferred to 21 MC 100 because these actions assert claims against Tully based on its work as a City contractor. At that conference, the Court described its rationale in distinguishing between the three current master dockets:

> [T]he way I looked at this is that 100 were the cases that were focused mainly against the City, because the Department of Design and Construction took the lead in the cleanup of the World Trade Center. 102 were cases where there were private or public homeowners independent of the Department of Design and Correction, to the Department of Design and Construction. And 103 is where plaintiffs did some work under the jurisdiction of the DDC and other work under the jurisdiction of private and public property owners.

(June 15, 2007 Status Conference Transcript 15:21 to 16:1). Under this rationale, the actions of the 21 MC 102 Tully Plaintiffs should be transferred to the 21 MC 100 docket. All of Tully's

---

[7] The cases that are the subject of this motion were all recently filed by the Napoli firm. This Court should note that Tully submitted a separate joint letter on August 1, 2007, seeking to transfer one other case, *Kirk Arsenault, et al. v. Tully Construction Co., Inc., Tully Industries Inc., and Deutsche Bank*, Docket No. 04-cv-5388 (AKH), from 21 MC 102 to 21 MC 100. The letter-request to transfer *Arsenault* into 21 MC 100 is based upon the same reasons contained herein; *i.e.* that Tully's work at 130 Liberty Street was performed within the parameters of the WTC Site as defined in CMO 3 (21 MC 100), and was part of the overall rescue, recovery, and debris removal effort directed by the DDC. The request in *Arsenault* was separately submitted because it involves different plaintiffs' counsel, R. Werthheimer, who is also counsel in *Zablocki*.

5

work at the Deutsche Bank building was as a City contractor involved in the rescue, recovery and debris removal operations – exactly the nature of the work for which Tully has been sued in 21 MC 100.

In sum, the 21 MC 102 Tully Plaintiffs' actions properly belong in the 21 MC 100 docket for the reasons previously articulated by the Court in its creation of the 21 MC 102 docket, in the *Zablocki* Order, and at the June 15, 2007 21 MC 102 status conference – namely, that claims based upon alleged conduct within the WTC Site and against the City or its contractors for their work in the rescue, recovery and debris removal operations are to be litigated under docket number 21 MC 100. All of the 21 MC 102 Tully Plaintiffs have asserted claims related to work performed by Tully as a City contractor at the Deutsche Bank building. Accordingly, Tully respectfully requests the Court to transfer the 21 MC 102 Tully Plaintiffs' actions to 21 MC 100.

## II. SHOULD THE 21 MC 102 TULLY PLAINTIFFS' ACTIONS NOT BE TRANSFERRED TO 21 MC 100, THOSE ACTIONS SHOULD BE STAYED AS TO TULLY.

Tully is one of the City's contractors, is a defendant in 21 MC 100 and is a party to the appeal of this Court's October 17, 2006 Opinion currently pending before the Second Circuit. The stay of proceedings in 21 MC 100 that was ordered by the Second Circuit was requested by many of the 21 MC 100 defendants, including Tully, and was established by the Second Circuit to protect the 21 MC 100 defendants' rights while the issues on appeal are being considered. As previously noted, this Court has broad discretion to transfer or stay actions before it. Here, should the Court determine not to transfer the 21 MC 102 Tully Plaintiffs' actions to 21 MC 100, Tully respectfully requests that the Court stay all such actions as against Tully. A detailed

examination of the typical factors involved in weighing whether a stay should issue[8] need not be addressed here as the Second Circuit already has determined that the essentially identical actions against Tully in the 21 MC 100 docket should be stayed. The actions of 21 MC 102 Tully Plaintiffs should be stayed because the claims of the 21 MC 100 plaintiffs against Tully and the claims of the 21 MC 102 plaintiffs against Tully are identical in that all work allegedly occurred within the WTC Site and Tully's role in all plaintiffs' actions is the same (working as the City's contractor in the rescue, recovery and debris removal operations).

If the Court refuses to transfer or stay the cases currently pending against Tully in 21 MC 102, Tully would be required to file an Answer to the Master Complaint and the various Check-Off Complaints, participate in discovery and, if necessary, proceed to trial.[9] Compelling Tully to engage in such activity while the Second Circuit is preparing to rule on the issue of Tully's potential immunity would allow the 21 MC 102 Tully Plaintiffs to improperly circumvent the Second Circuit's stay and prejudice Tully by forcing it to participate in the very type of litigation for which it sought and received a stay. This Court repeatedly has stated that the parties' substantive rights will not be adversely affected by the administrative decision to create a separate 21 MC 102 docket. Failure to stay the 21 MC 102 Tully Plaintiffs' actions as against Tully, however, will work precisely the damage that the Court has promised to avoid and will inflict exactly the prejudice that the Second Circuit's stay was issued to prevent.

---

[8] When determining a motion to stay, a court typically must weigh a number of factors including: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; and (4) the public interest. *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421 (S.D.N.Y. 2005).

[9] Pending resolution of this application and to preserve its rights pursuant to the Second Circuit's stay, Tully will refrain from responding to the 21 MC 102 Master Complaint, Check-Off Complaints and any discovery requests.

## CONCLUSION

For the foregoing reasons, Tully respectfully requests that this Court transfer all actions currently pending against it in 21 MC 102 to 21 MC 100 or, in the alternative, stay all such actions as to Tully pending resolution of the appeal before the Second Circuit.

Respectfully submitted,

_____s/_____
James E. Tyrrell, Jr., Esq.
PATTON BOGGS LLP
Counsel for Tully Construction Co. Inc. and
Tully Industries, Inc.

Dated: August 2, 2007